UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GEORGE W. GANIM, JR., <br>     *Plaintiff*, <br>     *v.* <br> ALLSTATE INSURANCE CO., <br>     *Defendant*. | Civil No. 3:18cv1863 (JBA) <br><br> July 30, 2020 |

**RULING GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff George W. Ganim, Jr., brings claims for breach of contract, negligent misrepresentation, bad faith, intentional misrepresentation, and unjust enrichment against Defendant Allstate Insurance Company ("Allstate"), the former provider of Plaintiff's flood insurance policy. Defendant moves for summary judgment, arguing that no genuine dispute of material fact exist and that on the undisputed facts in the record, Plaintiff's claims fail as a matter of law. (Def.'s Mot. for Summ. J. [Doc. # 36].) Plaintiff opposes, (Pl.'s Opp. [Doc. # 40]), and oral argument on Defendant's motion was held on June 26, 2020. For the reasons that follow, Defendant's Motion for Summary Judgment is granted.

**I. Background**

Defendant issued to Plaintiff a Standard Flood Insurance Policy ("SFIP") to cover a property owned by Plaintiff located in Milford, Connecticut ("Covered Property"). (Parties' L.R. Stmts. [Docs. ## 37, 40-2] ¶ 1.) The policy provided building coverage up to $250,000, subject to a $1,000 deductible, and contents coverage up to $57,000, subject to a $1,000 deductible, during the relevant time period (September 2012 – September 2013). (*Id.* ¶ 2.) The policy, like all SFIPs throughout the United States, was a standard SFIP as part of the National Flood Insurance Program ("NFIP"). (*See id.* ¶ 3.)

The SFIP requires that "in Case of Loss," the insured must send to the insurer "a proof of loss" "[w]ithin 60 days after the loss," which serves as the insured's "statement of the amount [he is] claiming under the policy." 44 C.F.R. Pt. 61, App'x A(1) § VII(J)(4) ("SFIP"). The proof of loss must be "signed and sworn" and must include certain enumerated

information. *Id.* "Loss Payment" will be made "60 days after" the provider receives the proof of loss, "or within 90 days after the insurance adjuster files the adjuster's report signed and sworn to by [the insured] in lieu of a proof of loss." *Id.* § VII(M)(1). If the provider "reject[s]" the "proof of loss in whole or in part," the insured may "accept" that "denial," "exercise [his] rights under this policy," or "[f]ile an amended proof of loss as long as it is filed within 60 days of the date of the loss." *Id.* § VII(M)(2).

Jason Raske, an Allstate employee who ran its NFIP claims organization from 2006 to 2016, testified about the flood insurance claims process. (Ex. 2 (Raske Dep.) to Def.'s Mot. for Summ. J. [Doc. # 37-2] at 6-7.) Mr. Raske testified that "additional documentation, support documentation could be produced either by a public adjuster or contractor or the policyholder" "at any point in time" during the claims process, and Allstate would "consider that for additional recommendations for payment." (*Id.* at 29.) Mr. Raske specifically listed "incurred cost," "mitigation," and "any type of work that was completed for that loss" as types of supplemental documentation that might be reviewed. (*Id.*)

Plaintiff alleges that the Covered Property was damaged on October 29, 2012, by Hurricane Sandy, and he reported the loss to Allstate on November 12, 2012. (*Id.* ¶¶ 4, 5.) Upon receiving Plaintiff's claim, Allstate sent to the Covered Property an independent adjustor, Michael Sujata, who provided an estimate of the damage incurred. (*Id.* ¶¶ 6, 7.) Allstate then made payment to Plaintiff in the amount of $129,365.13 for damages covered by the policy. (*Id.* ¶ 8.)

Shortly thereafter, Allstate sent a letter to Plaintiff notifying him of his obligations if he disagreed with the amount of the payment, but Plaintiff denies receiving this letter, explaining that it was sent to an address at which he no longer lived. (*Id.* ¶ 10.) That letter noted the $129,365.13 payment and explained both the procedures under which that payment had been authorized and the requirements for disputing the amount owed. (Ex. 7 (Feb. 15, 2013 Letter from Allstate to Ganim) to Ex. 1 (Ganim Dep.) to Def.'s Mot. for Summ.

J. [Doc. # 37-1] at 1.) The letter indicated that the NFIP had "granted a conditional and partial waiver of the requirements regarding Proofs of Loss," which had permitted Allstate "to adjust and pay a loss based on the evaluation of damage in the adjuster's report instead of the signed Proof of Loss or the insured-signed adjuster's report." (*Id.*) It provided that "[n]egotiation of the payments based upon the adjuster's report will not prohibit you from seeking additional payment under your policy where your limits of coverage have not been exhausted." (*Id.*) The letter explained that "[i]f you disagree with the amount of payment, you must send us a signed and sworn Proof of Loss meeting the requirements of Section VII (J)," which requirements the letter also listed in full. (*Id.*) It states that if payment was issued "based upon [Allstate's] adjuster's report and no additional Proofs of Loss are submitted," then Allstate will "close our file." (*Id.* at 2.) The letter explained that the NFIP had extended the amount of time in which to submit the required proof of loss from the standard 60 days to one year, and it detailed the procedure for reviewing the additional proof of loss and for appeal if the additional request is denied. (*Id.*)

Plaintiff's claim was then selected for further review under the Federal Emergency Management Agency's ("FEMA") Sandy Review Process, which used an alternate standard to issue additional payments under SFIPs. (*Id.* ¶¶ 12, 14.) As a result of that review, Allstate issued to Plaintiff an additional payment of $21,714.21. (*Id.* ¶ 13.) To receive that additional payment, Plaintiff was required to sign and submit a proof of loss for the additional amount, which he did on April 3, 2017. (*Id.* ¶¶ 15, 16; *see id.* ¶ 17 ("A proof of loss must be executed before funds can be issued under the SFIP.").) The standard 60-day timeline to submit a proof of loss was extended through October 29, 2014 for losses due to Hurricane Sandy, and then FEMA gave Plaintiff a limited waiver following the Sandy Review Process which allowed him to submit the additional proof of loss in April 2017. (*Id.* ¶¶ 18, 19.)

Plaintiff did not submit any additional proof of loss statement after April 3, 2017. (*Id.* ¶ 20.) Plaintiff hired David Biller, a public adjuster, who sent a letter to Allstate on April 7,

2017, which itemized "several claimed damages for which Mr. Ganim is either under-reimbursed or not reimbursed at all." (Ex. 8 (Biller Letter) to Ganim Dep. [Doc. # 37-1] at 1.) Mr. Raske testified that there was "no documentation support" for Mr. Biller's requests, and thus "a letter was generated . . . indicating that additional documentation would be required in order to move forward with a supplement" and sent "to the public adjuster [Mr. Biller] and the policyholder [Plaintiff]." (Raske Dep. at 30-31.)[1]

Plaintiff did not receive any additional payment from Allstate and initiated this action on October 5, 2018. (*See* Parties' L.R. Stmts. ¶ 23.) He alleges that he suffered an additional $35,596.34 in damages which Allstate should have covered under his policy but did not. (Ex. 4 (Pl.'s Damages Analysis) to Ganim Dep. [Doc. # 37-1] at 1.)

## II. Discussion

### A. Legal Standards

#### 1. Summary Judgment

Summary judgment is appropriate where, "resolv[ing] all ambiguities and draw[ing] all permissible factual inferences in favor of the party against whom summary judgment is sought," *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008), "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

---

[1] Although Mr. Raske testified that this letter was sent in May 2013, the Court notes that it was apparently sent in response to Mr. Biller's letter of April 2017.

242, 248 (1986)). When considering a motion for summary judgment, the Court may consider depositions, documents, affidavits, interrogatory answers, and other exhibits in the record. Fed. R. Civ. P. 56(c).

"The moving party bears the initial burden of showing why it is entitled to summary judgment." *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "Where, as here, the nonmovant bears the burden of proof at trial, the movant may show prima facie entitlement to summary judgment in one of two ways: (1) the movant may point to evidence that negates its opponent's claims or (2) the movant may identify those portions of its opponent's evidence that demonstrate the absence of a genuine issue of material fact, a tactic that requires identifying evidentiary insufficiency and not simply denying the opponent's pleadings." *Id*. at 272–73 (citing *Celotex*, 477 U.S. at 323). "If the movant makes this showing in either manner, the burden shifts to the nonmovant to point to record evidence creating a genuine issue of material fact." *Id*. (citing Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). "Like the movant, the nonmovant cannot rest on allegations in the pleadings and must point to specific evidence in the record to carry its burden on summary judgment." *Id*. (citing *Celotex,* 477 U.S. at 324; *Matsushita,* 475 U.S. at 586).

### 2. National Flood Insurance Program

The NFIP was established by the National Flood Insurance Act in recognition that "many factors have made it uneconomic for the private insurance industry alone to make flood insurance available to those in need of such protection on reasonable terms and conditions." 42 U.S.C. § 4001(b). Under the Act, "the federal government provides flood insurance subsidies and local officials are required to adopt and enforce various management measures." *Palmieri v. Allstate Ins. Co.,* 445 F.3d 179, 183 (2d Cir. 2006). FEMA administers the NFIP, through which "taxpayer funds . . . pay for claims that exceed the premiums collected from the insured parties." *Jacobson v. Metro. Prop. & Cas. Ins. Co.*, 672

F.3d 171, 174 (2d Cir. 2012). Congress authorized FEMA to "prescribe regulations establishing the general method or methods by which proved and approved claims for losses may be adjusted and paid for any damage to or loss of property which is covered by flood insurance." 42 U.S.C. § 4019. FEMA's regulatory scheme, including the terms and exact language of the SFIP, is recorded in the Code of Federal Regulations. *See* 44 C.F.R. §§ 61.1–78.14.

Pursuant to its authority under 42 U.S.C. § 4081(a), FEMA created the Write-Your-own ("WYO") Program, which allows private insurers to issue and administer flood-risk policies under the NFIP. *See Jacobson*, 672 F.3d at 174-75. "WYO companies" like Allstate "may act as 'fiscal agents of the United States,' . . . but they are not general agents and therefore must strictly enforce the provisions set out in the regulations, varying the terms of a policy only with FEMA's express written consent." *Id.* at 175 (quoting 42 U.S.C. § 4071(a)(1)). Because of the nature of the relationship between WYO providers and the government, SFIP policies and contracts "must be strictly construed and enforced" and should not be "interpreted like any private insurance contract." *Id.*

The SFIP indicates that flood insurance is provided "under the terms of the National Flood Insurance Act of 1968 and its Amendments, and Title 44 of the Code of Federal Regulations." SFIP § I. The SFIP provides that the insured will be paid "for direct physical loss by or from flood" to the covered property if the insured has "paid the correct premium," "compl[ied] with all terms and conditions of this policy," and "furnished accurate information and statements." *Id.*

### B. Defendant's Motion for Summary Judgment

Defendant argues summary judgment should be granted on all counts because "Plaintiff's claims against Allstate fail as a matter of law because there are no genuine issues of material fact." (Def.'s Mot. for Summ. J. at 1.) Specifically, Defendant argues that "Plaintiff failed to meet the conditions precedent prior to filing suit by not submitting a timely, signed

6

and sworn proof of loss statement . . . as required by Articles VII(J) and (R) of the Plaintiff's" SFIP. (*Id.*) In the alternative, Defendant argues that Plaintiff's "claims are time-barred as they were brought more than a year after Plaintiff received the most recent payment for his claimed loss," that Plaintiff has also "f[a]iled to prove entitlement to any damages," and that "all of Plaintiff's extra-contractual state law claims are preempted by federal law as they are claims-handling issues." (*Id.* at 1, 4*.*)

### i. Count One: Breach of SFIP Contract

Any person insured through the NFIP whose claim is disallowed, in whole or in part, "may institute an action against" the Administrator of FEMA "within one year after the date of mailing of notice of disallowance or partial disallowance." 42 U.S.C. § 4072. By "regulation," "[s]uits against the FEMA Director upon the disallowance of a claim" which are authorized by § 4072 may be brought against "the WYO company . . . in place of the FEMA director." *Palmieri*, 445 F.3d at 184 (internal quotations and citations omitted); *see Copeland v. Allstate Ins. Co.*, No. 14-cv-1556(AMD)(JO), 2017 WL 10088571, at *5 (E.D.N.Y. Jan. 27, 2017) ("Because the plaintiff sues Allstate in its capacity as a WYO flood insurance provider, the suit is, in practical terms, a suit against FEMA."). The SFIP also provides that any suit "to recover money under this policy . . . must start . . . within one year after the date of the written denial of all or part of the claim." SFIP § VII(R).

Thus Defendant argues that Plaintiff's action is time-barred because he "was last notified of the value of his claim no later than March 17, 2017 when he was notified by FEMA of the award of additional money under the Sandy Review Process" but did not file this action until October 5, 2018, more than one year later. (Def.'s Mot. for Summ. J. at 7-8.)

Plaintiff's opposition brief does not address this argument. (*See generally* Pl.'s Opp. [Doc. # 40].) At oral argument, Plaintiff argued that there was an "ongoing course of conduct" between Plaintiff and Defendant which suggested that there was no particular "end of the road" for Plaintiff's claim, but rather that he could continue to negotiate for additional

payments beyond the March 2017 award. According to Plaintiff, the possibility of additional recovery existed well beyond the March 2017 communications. Thus, Plaintiff argues, because of the "ongoing course of conduct" which suggested that the opportunity for additional negotiated recovery remained after the mailing of the notice of disallowance, Defendant waived the requirement that Plaintiff's suit be filed "within one year after the date of mailing of [that] notice." 42 U.S.C. § 4072. At worst, according to Plaintiff, there remains a genuine dispute of material fact as to whether such ongoing course of conduct existed, and thus Defendant's motion should be denied.

Plaintiff's argument fails for two reasons. First, contrary to Plaintiff's suggestion and regardless of the alleged course of conduct, Defendant could not waive the statutory requirement that an action for partial disallowance of Plaintiff's claim must be filed "within one year after the date of mailing of notice of disallowance." *Id.* "It is well established, however, that the actions of an insurance company under the NFIP cannot waive requirements set by the government, or operate as an estoppel against the government." *Jacobson*, 672 F.3d at 177 (rejecting plaintiff's argument, which relied on equitable principles of contract interpretation in private insurance disputes, that WYO provider waived certain NFIP requirements). "WYO companies . . . must strictly enforce the provisions set out in the regulations, varying the terms of a policy only with FEMA's express written consent." *Id.* at 175. Moreover, "[i]n the context of federal insurance policies, the Supreme Court has long held that an insured must comply strictly with the terms and conditions of such policies." *Id.* at 176 (citing *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384-85 (1947)).

Therefore, the statutory and regulatory requirements of the NFIP must be strictly construed and enforced, regardless of any conduct by Defendant which, according to Plaintiff, suggested that those requirements were waived. When "private parties make demands on the public fisc" and "federal funds are implicated, the person seeking those funds is obligated to familiarize himself with the legal requirements for receipt of such

8

funds." *Id.* (internal quotation omitted). "Those who deal with the Government are expected to know the law and may not rely on the conduct of Government agents contrary to law" to evade the requirement of strict compliance. *Id.* (internal quotation omitted). This is true even where strict construction and enforcement of "governmental insurance policies . . . can sometimes create ostensibly inequitable results," which might have been avoided in interpreting typical private insurance contracts. *Id.* at 176.

Thus, Defendant did not waive the statutory requirement that Plaintiff institute this action within one year after the mailing of that notice, whether or not Defendant engaged an ongoing course of conduct after the mailing of the notice of partial disallowance, as Plaintiff suggests. Plaintiff was obligated to familiarize himself with that statutory requirement, and Defendant's conduct cannot excuse Plaintiff's failure to comply.

Second, contrary to Plaintiff's suggestion, the record does not reveal any genuine dispute of material fact as to the nature or extent of Plaintiff's communications with Defendant after March 2017. Plaintiff's counsel suggested at oral argument that Plaintiff had been under the impression that negotiations with Defendant were ongoing beyond March and April 2017 and expected such negotiations to continue. But the record contains no communications between Plaintiff and Defendant after April 2017. (*See* Biller Letter.) Even Mr. Raske's testimony, upon which Plaintiff relies heavily, only suggests that the last communication between Plaintiff and Defendant was in May 2017, at the latest. (Raske Dep. at 30-31.) Thus, even drawing all reasonable inferences in Plaintiff's favor, there is no evidence in the record to support a conclusion that Plaintiff and Defendant were engaged in an ongoing negotiation process through October 5, 2017—the date which would place Plaintiff's filing of this action "within one year" of the end of that process. Plaintiff's understanding or expectation of ongoing negotiations with Defendant does not create a genuine dispute of material fact in the absence of any evidence in the record to support that understanding.

For those reasons, Plaintiff's claim for breach of the SFIP contract is untimely and thus is barred by 42 U.S.C. § 4072.

### ii.     Counts Two through Five: State Law Tort Claims

In addition to his claim under the SFIP, Plaintiff brings state law tort claims for negligent misrepresentation, bad faith, intentional misrepresentation, and unjust enrichment. Defendant argues that it is also entitled to summary judgment on those counts because "Plaintiff's only available recourse under the SFIP is a breach of contract," which he brings in Count One. (Def.'s Mot. for Summ. J. at 11.) The SFIP provides that "all disputes arising from the handling of any claim under the policy are governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended (42 U.S.C. 4001, et seq.), and Federal common law." SFIP § IX.

Plaintiff's opposition brief did not address this argument, (*see generally* Pl.'s Opp.), but at oral argument, Plaintiff argued again that an ongoing course of conduct between Plaintiff and Defendant brought Defendant's actions outside the scope of the SFIP requirements, thus permitting Plaintiff to bring these additional claims. But Plaintiff's argument—which effectively suggests that Defendant waived the limitation on Plaintiff's available recourse through its conduct—must fail for the same reasons that his waiver argument failed as to the timeliness of his action.

Moreover, although the Second Circuit has not yet addressed this issue, several other Circuits have concluded that a party insured through the NFIP may not bring additional state law tort claims arising out of the handling of a claim. *See, e.g., C.E.R. 1998, Inc. v. Aetna Cas. And Surety. Co.*, 386 F.3d 263, 271 (3rd Cir. 2004) (holding that state tort claims are preempted and claimants are limited to "resolving their disputes by means of the remedies FEMA provides" and noting that decision "is consistent with the decisions of other courts"); *Wright v. Allstate Ins. Co.*, 500 F.3d 390, 394 (5th Cir. 2007); *Gunter v. Farmers Ins. Co.*, 736 F.3d 768, 772 (8th Cir. 2013). And although the Second Circuit "has not directly addressed

the preemptive effect of the NFIP, the Court's more general commentary on the NFIA regulatory scheme is instructive." *Copeland*, 2017 WL 10088571, at *6. The *Copeland* court reviewed the Second Circuit's clear directive that the requirements of the SFIP must be "strictly construed and enforced," *Jacobson*, 672 F.3d at 175, and found it "not surprising, then, that almost every court in this Circuit to consider the question has concluded that the NFIA does not expressly authorize an insured to bring extra-contractual state-law claims relating to an insurer's claims handling, and thus preempts those state-law claims," *Copeland*, 2017 WL 10088571, at *6 (internal quotations omitted) (collecting cases).

For substantially the same reasons set out in *C.E.R. 1998, Inc.* and *Copeland*, this Court will join many others in concluding that the NFIP preempts the additional state law claims brought by Plaintiff.

### III. Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment [Doc. # 36] is GRANTED. Judgment shall enter in Defendant's favor on all counts of Plaintiff's Complaint. The Clerk is directed to close this case.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 30th day of July 2020.